**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | x | Hon. Stanley R. Chesler, U.S.D.J. |
| ANDERSON, et al., | x | |
| plaintiffs, | x | |
| | x | Civ. No. 05-1809 |
| v. | x | |
| | x | **OPINION** |
| THE COUNTY OF MONMOUTH, et al., | x | |
| | x | |
| defendants. | x | |
| | x | |

**CHESLER, District Judge**

This matter comes before the Court by way of motion of defendants the County of

Monmouth (also pled as the Office of the Monmouth County Sheriff and Monmouth County

Correctional Institute), Sheriff Joseph Oxley, former Warden Clifford Daniels, and Marian

Bibby, R.N.[1] (the "Monmouth Defendants") to dismiss plaintiffs' Complaint for failure to

comply with (1) the applicable statutes of limitations; and (2) the New Jersey Tort Claims Act.

Defendants Centra State Medical Center, Sanjay Misra, M.D., Yousuf Masood, M.D., Edmund

Preston, M.D., Albert Endler, N.P. and Kenneth Faistl, M.D., P.A. (hereinafter the "Medical

Defendants") filed a cross-motion for summary judgment[2] on plaintiffs' claims under the

---

[1]The Monmouth Defendants originally did not move on behalf of Ms. Bibby but later
sought to amend their motion to include her as a moving party.  (See Letter of Linda Grasso
Jones dated August 10, 2005 at 1.)  [Docket Entry No. 12.]  The Court grants the defendants'
application and will consider Ms. Bibby as joining in the motion by the Monmouth Defendants.

[2]The Medical Defendants filed what they characterize as a "Cross-motion for Summary
Judgment."  Local Civil Rule 7.1(h), provides that a "cross-motion related to the subject matter
of the original motion may be filed by the party opposing the motion together with that party's
opposition papers and may be noticed for disposition on the same date as the original motion as

1

Wrongful Death Act and Survivor's Act for failure to comply with the applicable statutes of limitations, and for dismissal of plaintiffs' claim for punitive damages in connection with their wrongful death claims.  For the reasons set forth below, the defendants' motions are granted in part and denied in part.

## I.      FACTS

This action arises from the death of J.B. Douglas Anderson, an HIV positive inmate at Monmouth County Correction Institute ("MCCI").  (Compl. at ¶ 21.)  The plaintiffs are Joanne Anderson, as Administrator ad Prosequendum of the Estate of J.B. Douglas Anderson; Joanne Anderson, individually and in her capacity as mother of the decedent; and Anne Blackwell, as guardian ad litem for Douglas Anderson Lee, the minor child of J.B. Douglas Anderson.

### A.      Plaintiff's Factual Allegations

The Complaint describes several medical visits by Mr. Anderson to Colts Neck Medical Associates ("Medical Associates"), a third-party medical treatment provider situated at MCCI. Mr. Anderson first presented himself to Medical Associates on January 17, 2003 for an "intake screening," where he was given a test for tuberculosis.  (Id. at ¶ 24.)  Based on the results of the intake screening, Mr. Anderson was approved for work at MCCI.  (Id. at ¶¶ 25-27.)  On the same day, Mr. Anderson presented himself for a follow-up visit and an appointment was made for a further visit, at which he was prescribed medications.  (Id. at ¶ 30.)

Three days later, on January 20, 2003, Mr. Anderson presented himself for a "priority

---

long as the opposition papers are timely filed."  The Medical Defendants' motion deals with claims against them, rather than "the subject matter of the original motion," namely claims against the Monmouth Defendants.  Moreover, the so-called cross-motion was not filed in connection with opposition to the "original motion."  Accordingly, the Medical Defendants' motion is mislabeled and the Court will treat it as a normal motion for summary judgment.

call" with Medical Associates that revealed a wheeze but that all else was "normal" and he was prescribed Motrin for pain.  (Id. at ¶ 31.)  On January 21, 2003, Mr. Anderson presented himself for an emergency visit, complaining of headaches and muscle aches in his lower back.  (Id. at ¶ 32.)  Defendant Albert Endler, N.P., examined plaintiff, noted a wheeze in his breathing, and again prescribed Motrin for pain.  (Id.)  On January 22, 2003, Mr. Anderson again presented himself for an emergency visit, complaining of fatigue and malaise and, at 10:30 a.m., was admitted to the infirmary by defendant Edmond Preston, M.D., for a "follow-up" on his HIV-positive status and symptoms.  (Id. at ¶ 33.)

On January 23, 2003, Mr. Anderson presented himself again to Medical Associates because of headaches and was assessed by defendant Yousef Masood, M.D.  (Id. at ¶¶ 34-35.)  Dr. Masood arranged for Mr. Anderson to be examined the following Monday, January 27, 2003, for further assessment, and sent him back to his cell.  (Id. at ¶ 36.)  While in his cell, Mr. Anderson complained of dizziness and weakness, was reportedly hitting his head against his cell wall, and reportedly fell in his cell and suffered a cut on his face.  (Id. at ¶¶ 37-42.)

On January 24, 2003, Mr. Anderson complained of chest pain, weakness, poor memory, and was unable to sit upright in a chair.  (Id. at ¶ 42.)  He was referred to defendant Endler for psychiatric disorder and, after a psychological evaluation, defendant Endler and Dr. Wolff put him on a constant watch to observe for "malingering."  (Id. at ¶¶ 42-44.)  Dr. Wolff returned Mr. Anderson to his cell over Mr. Anderson's objections.  (Id. at ¶ 46.)

On January 25, 2003, Mr. Anderson was transferred to Centra State Hospital for immediate attention because he sustained a "self inflicted head injury," was experiencing slurred speech, confusion, dehydration, and weakness.  (Id. at ¶ 49.)  At Centra State, he was handcuffed

3

to his bed for being "combative" toward nursing staff members.  (Id.)  Plaintiffs claim Mr. Anderson's behavior was improperly considered an intentional act rather than related to his medical condition.  (Id. at ¶ 50.)

Mr. Anderson was administered an IV and, after fewer than eight hours, returned to MCCI in the early morning of January 26, 2003.  (Id. at ¶¶ 51-52.)  Upon his return, Mr. Anderson had a dime-sized lump on the right side of his lip and was rambling.  (Id. at ¶ 52.)  At 6:00 a.m., Mr. Anderson was observed hanging off his bed and Nurse Patricia Ellman was summoned to check on him.  (Id. at ¶ 53.)  At that point, Mr. Anderson was unresponsive to verbal and painful stimuli.  (Id. at ¶ 54.)  Yet, defendant Dr. Sanjay Misra requested that he not be transferred.  (Id. at ¶ 55.)  After the head of the paramedic unit spoke to Dr. Misra, Mr. Anderson was returned to Centra State, where he again had to be restrained.  (Id. at ¶¶ 56-57.)  On January 29, 2003, while awaiting transfer to St. Francis Medical Center, Mr. Anderson died.  (Id. at ¶¶ 59-61.)  The cause of death was listed as "Cryptococcal Meningitis."  (Id. at ¶ 64, Ex. A; ¶ 65, Ex. B.; and ¶ 65, Ex. C.)

**B.       Discovery of Plaintiffs' Causes of Action**

On or before April 15, 2003, the decedent's mother, Joanne Anderson, retained the law firm of Wilentz, Goldman & Spitzer, P.A. to review the circumstances surrounding Mr. Anderson's death.  (See Certification of Linda Grasso Jones, Esq. ("Jones Cert."), Ex. A.)  By letter dated April 15, 2003, the Wilentz firm requested medical records from MCCI pertaining to Mr. Anderson's health.  (Id.)  Plaintiffs allege that Mr. Anderson's medical records were requested and reviewed at the end of October or November of 2003.  (Compl. at ¶ 71.)  Plaintiffs claim they only learned the nature of Mr. Anderson's complaints and the cause of his death in

4

October or November of 2003.  (Id. at ¶ 72.)  It was at this time that the Anderson family

allegedly learned that the failure of the defendants to use reasonable care may have been the

cause of Mr. Anderson's death.  (Id. at ¶ 74.)  On February 16, 2005, Dr. Robert Griefinger

prepared an Affidavit of Merit certifying within a reasonable degree of medical probability that,

had the proper standard of care been exercised, defendants would have discovered the

Cryptococcal Meningitis infection and been able to save Mr. Anderson's life.  (Id. at ¶ 71, Ex. E.)

     **C.**    **Plaintiff's Causes of Action**

     As a result of these alleged events, on April 5, 2005, plaintiffs filed the Complaint.

[Docket Entry No. 1.]  Plaintiffs asserted claims against all defendants under 42 U.S.C. § 1983

for deliberate indifference to Mr. Anderson's serious medical needs in violation of the Fifth and

Fourteenth Amendments (Count One, id. at ¶¶ 79-83); cruel and unusual punishment in violation

of the Eighth Amendment (Count Two, id. at ¶¶ 84-86); deprivation of life, liberty, and the

pursuit of happiness in violation of the Fifth and Fourteenth Amendments (Count Three, id. at ¶¶

87-89); and respondeat superior liability for constitutional violations (Count Four, id. at ¶¶ 90-

93); under the New Jersey State Constitution for Mr. Anderson's deprivation of life, liberty, and

the pursuit of happiness (Count Five, id. at ¶¶ 94-96); and violation of his right to be free from

cruel and unusual punishment (Count Six, id. at ¶¶ 97-99); under the New Jersey Law Against

Discrimination, N.J.S.A. 10:5-1 et seq., ("NJ LAD") for discrimination based on Mr. Anderson's

HIV positive status (Count Seven, id. at ¶¶ 100-102); under common law negligence and/or

medical malpractice (Count Eight, id. at ¶¶ 103-08); common law "outrage" (Count Nine, id. at

¶¶ 109-111); and wrongful death (Count Ten, id. at ¶¶ 112-114); under the New Jersey

Survivor's Act (Count Eleven, id. at ¶¶ 115-17); and against Centra State only for violation of the

Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd (Count

Twelve, id. at ¶¶ 118-124).[3]

### D.     The Monmouth Defendants' Motion to Dismiss

On July 13, 2005, the Monmouth Defendants filed the instant motion.  [Docket Entry No.

7.]  First, the Monmouth Defendants argue that Counts One through Eleven of the Complaint

should be dismissed because the Complaint was filed more than two years after Mr. Anderson's

death.  (Monmouth Def.'s Br. at 2-3.)  Second, they argue that Counts Eight, Nine, Ten, and

Eleven (the New Jersey state law claims) against them should be dismissed for failure to file a

notice of tort claims under N.J.S.A. 59:8-1 et seq.

In their opposition, plaintiffs argue that plaintiff Douglas Anderson Lee's United States

Constitutional claims (Counts One through Four) (Pl.'s Opposition to MTD at 11), state

constitutional claims (Counts Five and Six), NJ LAD claims (Count Seven) (id. at 13-15), and

"outrage" and wrongful death claims (Counts Nine and Ten, respectively) (id. at 11-13) should

not be dismissed because he is under eighteen years old and, therefore, the statute of limitations

is tolled and has not yet begun to run.  They argue that infancy tolling also applies to defeat

defendants' Tort Claims Act arguments.  (Id. at 19-20.)  Plaintiffs further argue they did not

discover facts that form the basis of their negligence/medical malpractice (Count Eight) and

Survivor's Act (Count Eleven) claims until November 2003 and, thus, these causes of action did

not accrue until that time.  (Id. at 15-19.)  Accordingly, they argue, the April 5, 2005 filing date

did not violate the statute of limitations.  (Id.)

---

[3]Plaintiffs' counsel has advised the Court of its voluntary dismissal of Count Twelve of
the Complaint, which alleged a violation of EMTALA, 42 U.S.C. § 1395dd against Centra State
Medical Center.  (Letter of Nancy S. Martin, Esq. dated September 20, 2005.)

In their reply, the Monmouth Defendants argue that plaintiffs' constitutional claims under 42 U.S.C. § 1983 (Counts One through Four), NJ LAD (Count Seven), and New Jersey common law (Counts Eight and Nine) can only be brought by Joanne Anderson as Administrator Ad Prosequendum and, therefore, cannot be tolled by the infancy doctrine.   (Monmouth Def.'s Reply at 6-7, 8-9, 10.)  The Monmouth Defendants further argue the discovery rule does not toll accrual of plaintiffs' claims because they knew or should have known of the facts giving rise to their claims only 1 ½ months after Mr. Anderson's death, making the Complaint untimely.  (Id. at 12-15.)

Moreover, the Monmouth Defendants argue plaintiffs' Wrongful Death Act claim should be dismissed for a number of reasons.  First, they argue the statute of limitations embodied in the New Jersey Wrongful Death Act cannot be tolled under the discovery rule.  (Id. at 15.)  The Monmouth Defendants further argue that since plaintiffs have failed to provide any proof of the existence of the minor Douglas Anderson Lee, his age, or that he is in fact a child of the decedent, the infancy doctrine cannot toll the claims of the estate.  (Id. at 16-17.)  Relatedly, the Monmouth Defendants argue plaintiffs' failure to file a timely notice of claim under the New Jersey Tort Claims Act bars their state common law claims.  (Id. at 17-18.)  They argue the infancy doctrine does not apply to the filing of a notice of claim under the New Jersey Tort Claims Act.  (Id. at 18-19.)

### E.    The Medical Defendants' Cross-Motion for Summary Judgment

In their summary judgment motion, the Medical Defendants argue that Douglas Anderson Lee's minority does not toll plaintiffs' Survivor's Act claim.  (Centra State's Br. at 6-9.)  They

further argue the discovery rule cannot be applied to wrongful death cases.[4]  (Id. at 9-13.)

Finally, the Medical Defendants argue that punitive damages are not recoverable in the wrongful

death claim by Douglas Anderson Lee, the only permissible wrongful death claim.  (Id. at 14.)

       In their opposition, plaintiffs do not argue the Survivor's Act claims are subject to tolling

under the infancy doctrine, but rather that the discovery rule applies to toll their accrual until late

October, 2003 and, thus, the limitations period did not expire until October 2005.  (Pl.'s Opp. Br.

to Centra State's Motion at 13-15.)  Plaintiffs further argue the discovery rule applies to wrongful

death claims under the LaFage case as well as to plaintiffs' NJ LAD and Constitutional claims.

(Id. at 16-17.)[5]

       In their reply, the Medical Defendants concede that the minor plaintiff Douglas Anderson

Lee may pursue his wrongful death claim.  (Centra State's Reply at 3.)  They argue, however,

that plaintiffs' constitutional and NJ LAD claims should be dismissed as untimely because they

are Survivor's Act claims.  (Id. at 13-14.)  The Medical Defendants also argue that plaintiffs'

wrongful death claim should be dismissed as untimely.  (Id. at 10-12.)  The Medical Defendants

submitted a September 8, 2005 letter in furtherance of their cross motion for summary judgment

in which they argue that plaintiffs' state constitutional claims, NJ LAD claim, and the claims

under 42 U.S.C. § 1983 are untimely Survivor's Act claims.  (Medical Defendants' Reply at 1-2.)

---

[4]The Medical Defendants concede that the wrongful death claim by Anne Blackwell as guardian ad litem for Douglas Anderson Lee is permissible.  (Centra State's Br. at 14.)

[5]Plaintiffs do not oppose the Medical Defendants' argument that punitive damages are not recoverable under the Wrongful Death Act and, therefore, their claim for such damages is dismissed.  See Pavlova v. Mint Mgmt. Corp., 375 N.J. Super. 397, 409 n.2 (App. Div. 2005) (quoting Smith v. Whitaker, 160 N.J. 221, 231-32 (1999) and stating "[p]unitive damages . . . are not permitted on a wrongful death claim, the primary purpose of which 'is to compensate survivors for the pecuniary losses they suffer because of the tortious conduct of others . . . .'").

[Docket Entry No. 19.]

## II.    DISCUSSION

### I.    Introduction

Since neither the Complaint nor plaintiffs' motion papers ascribe their claims to a particular plaintiff, the Court must assume that all plaintiffs are asserting all claims.  The challenged claims fall into two categories:  Survivor's Act claims and Wrongful Death Act claims.  Determination of whether or not each claim is properly asserted by each plaintiff requires a review the statutory scheme under which these claims are brought.

At common law, a right to bring an action in trespass was personal and died with the person.  Canino v. New York News, Inc., 96 N.J. 189, 191-92 (1984).  Survivor's action statutes, such as the New Jersey Survivor's Act[6], modified the common law rule by allowing a right of action in trespass to be brought by the personal representative of the decedent's estate. Alexander v. Whitman, 114 F.3d 1392, 1399 (3d Cir. 1997) (citing Soden v. Trenton & Mercer County Traction Co., 101 N.J.L. 393, 394-95 (1925)).  A Survivor's Act claim "gives executors

_____

[6]The New Jersey Survivor's Act provides:

> Executors and administrators may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser, and recover their damages as their testator or intestate would have had if he was living.

> In those actions based upon the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived, the executor or administrator may recover all reasonable funeral and burial expenses in addition to damages accrued during the lifetime of the deceased.

N.J.S.A. 2A:15-3.

or administrators a right of action for tortious injury or damage to the deceased or his property incurred prior to death." <u>Alexander</u>, 114 F.3d at 1398 (quoting <u>Alfone v. Sarno</u>, 168 N.J. Super. 315 (App. Div. 1979)).  The plaintiff in a Survivor's Act claim may recover for the decedent's conscious pain and suffering between the time of injury and the time of death, loss of enjoyment of life, and funeral and burial expenses.  <u>Id.</u> (citations omitted).  According to the statute, Survivor's Act claims can only be asserted by the Estate.

In this case, a number of plaintiffs' claims could only have been brought by Mr. Anderson himself and, therefore, can now only be asserted by the Administratrix ad Prosequendum.  Specifically, Counts One through Four allege violations of Mr. Anderson's civil rights and could only have been asserted by Mr. Anderson.  <u>See</u>, <u>e.g.</u>, <u>Hauptmann v. Wilentz</u>, 570 F. Supp. 351, 364 n.7 (D.N.J. 1983).  Similarly, Counts Five and Six, which allege violations of Mr. Anderson's rights under the New Jersey Constitution, belonged solely to the decedent.  Count Seven alleges discrimination under NJ LAD, which is only assertable by the person against whom the discrimination was directed.  <u>See</u> <u>Herman v. Coastal Corp.</u>, 348 N.J. Super. 1, 20 (App. Div. 2002).  Moreover, Counts Eight and Nine, which assert causes of action for violation of common law principles against Mr. Anderson, can only be asserted by the Administratrix ad Prosequendum.  <u>See</u> N.J.S.A. 2A:15-3.  Put simply, no plaintiff, except for the Administratrix ad Prosequendum, has standing to assert these claims under the Survivor's Act.  Accordingly, Counts One through Nine and Eleven of Joanne Anderson, individually and in her capacity as mother of the decedent; and Anne Blackwell, as guardian ad litem for Douglas Anderson Lee, the minor child of J.B. Douglas Anderson, are dismissed.

The New Jersey Wrongful Death Act[7] created a separate cause of action for the loss suffered by designated beneficiaries.  F.F. v. G.A.D.R., 331 N.J. Super. 23, 28 (App. Div. 2000). A Wrongful Death action is brought in the name of the deceased's representative, N.J.S.A. 2A:31-2[8], "for the exclusive benefit of those entitled to take any intestate personal property of the decedent, with those actually dependent having priority."  Alfone v. Sarno, 168 N.J. Super. 315, 322-23 (App. Div. 1979), modified on other grounds, 87 N.J. 99 (1981). .  Unlike a Survivor's Act claim, a Wrongful Death Act claim is brought to compensate survivors for pecuniary losses they suffer because of the tortious conduct of others.  Id. at 321

Recovery under the Wrongful Death Act "is not a matter of punishment for an errant defendant or of providing for decedent's next of kin to a greater extent than decedent himself would have been able, but is rather a replacement for that which decedent would likely have

---

[7]New Jersey's Wrongful Death Act provides, in relevant part, as follows:

> When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances amounting in law to a crime.

N.J.S.A. 2A:31-1.

[8]N.J.S.A. 2A:31-2 provides as follows:

> Every action commenced under this chapter shall be brought in the name of an administrator ad prosequendum of the decedent for whose death damages are sought, except where decedent dies testate and his will is probated, in which event the executor named in the will and qualifying, or the administrator with the will annexed, as the case may be, shall bring the action.

provided and no more." <u>Hudgins v. Serrano</u>, 186 N.J. Super. 465, 476 (App. Div. 1982).  Rather, "[t]he amount of recovery is based upon the contributions, reduced to monetary terms, which the decedent might reasonably have been expected to make to his or her survivors." <u>Alexander</u>, 114 F.3d at 1398 (internal quotation marks omitted).  Stated differently, the Wrongful Death Act seeks to remedy the "deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased." <u>McStay v. Przychocki</u>, 7 N.J. 456, 460, (1951) (internal quotation marks omitted).  For example, a minor child may recover the pecuniary value of the loss of the care, guidance and advice of a parent during their minority. <u>See</u> <u>Suarez v. Berg</u>, 117 N.J. Super. 456, 462 (App. Div. 1971).

With these principles in mind, the Court turns to the instant motions.  Both the Monmouth Defendants and the Medical Defendants argue that plaintiffs' claims must be dismissed because they are filed outside of the statute of limitations.  The Court will address the timeliness of plaintiffs' remaining Survivor's Act and Wrongful Death Act claims under the appropriate statutes of limitations and the New Jersey Tort Claims Act.

### ii.   Motion to Dismiss Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975); <u>Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.</u>, 140 F.3d 478, 483 (3d Cir. 1998); <u>Robb v. Philadelphia</u>, 733 F.2d 286, 290 (3d Cir. 1984).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those

documents.  See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Zynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982).

### iii.    Summary Judgment Standard

The Medical Defendants style theirs as a "Cross-Motion for Summary Judgment." Federal Rule of Civil Procedure 56 provides that summary judgment may be granted if the materials submitted to the Court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).  Where the facts are not in dispute and the issues contested in a summary judgment motion are legal issues, the Court may decide the legal issues and rule accordingly on the summary judgment motion.  See Ingram v. County of Bucks, 144 F.3d 265, 267 (3d Cir. 1998) (when there is no genuine issue of material fact in dispute and the issue facing the court is a question of law, it can properly be resolved on summary judgment).

### iv.    Survivor's Act Claims

The only remaining plaintiff asserting Survivor's Act claims (Counts One through Nine and Eleven) is Joanne Anderson as Administratrix ad Prosequendum for the estate of J.B. Douglas Anderson.  Plaintiff's Survivor's Act claims are all governed by New Jersey's two-year personal injury statute, N.J.S.A. 2A:14-2.  Specifically, Counts One through Four are brought

pursuant to 42 U.S.C. Section 1983 for violations of Mr. Anderson's rights under the United

States Constitution.  Because 42 U.S.C. Section 1983 does not contain a statute of limitations,

"federal courts must look to the statute of limitations governing analogous state causes of

action."  Urritia v. Harrisburg County Police Dept., 91 F.3d 451, 457 n.9 (3d Cir. 1996); see also

Sameric Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir.1998).  In Section

1983 actions, federal courts apply the statute of limitations for personal injury actions in the

jurisdiction in which the case is venued.  See Wilson v. Garcia, 471 U.S. 261, 276-280 (1985).

Thus, the federal constitutional claims embodied in Counts One through Four are governed by

New Jersey's two-year personal injury limitations statute, N.J.S.A. 2A:14-2.[9]  The New Jersey

Appellate Division has likewise applied this limitations period to claims brought for violations of

rights under the New Jersey Constitution.  See, e.g., Freeman v. State, 347 N.J. Super. 11, 20-22

& n.3 (App. Div. 2002) (affirming trial court's dismissal of federal and New Jersey state

constitutional claims as untimely under New Jersey's two-year statute of limitations for personal

injury claims, N.J.S.A. 2A:14-2).  Plaintiff's Counts Five and Six are also governed by N.J.S.A.

2A:14-2.  Likewise, Count Seven, which alleges discrimination under NJ LAD, is governed by

the two-year personal injury statute of limitations.  Montells v. Haynes, 133 N.J. 282, 292 (1993)

(holding "the statute of limitations for personal-injury claims more closely comports with the

purpose of LAD.").  Counts Eight and Nine, which assert claims for negligence and "Outrage,"

respectively, are also covered by N.J.S.A. 2A:14-2.

---

[9]In applying state statutes of limitations in civil rights cases, courts also incorporate relevant state tolling rules.  See Hardin v. Straub, 490 U.S. 536, 543-44 (1989); Getchey v. County of Northumberland, 120 Fed. Appx. 895, 897-98 (3d Cir. 2005).

N.J.S.A. 2A:14-2 provides in relevant part:

> Every action at law for an injury to the person caused by the
> wrongful act, neglect or default of any person within this State
> shall be commenced within 2 years next after the cause of any such
> action shall have accrued . . . .

The statute is silent on when a cause of action will be deemed to have "accrued."  Generally, a

medical malpractice action "accrues" on the date the alleged act or omission occurred.  Baird v.

American Med. Optics, 155 N.J. 54, 65 (1998) (citing Bauer v. Bowen, 63 N.J. Super. 225, 230

(App. Div. 1960)).  Plaintiff, however, argues the Survivor's Act claims are timely because she

did not discover the facts surrounding the injury until in or about November 2003.  Thus, the

plaintiff argues, the Complaint, which was filed on April 5, 2005, is timely under New Jersey's

"discovery rule."

With respect to plaintiffs' state law claims, the discovery rule accounts for situations

where a plaintiff "does not know or have reason to know that he has a cause of action against an

identifiable defendant until after the normal period of limitations has expired . . . ."  Caravaggio

v. D'Agostini, 166 N.J. 237, 245-46 (2001) (citations and internal quotation marks omitted).  The

discovery rule postpones the accrual of a cause of action where a party is reasonably "unaware

either that he has been injured, or that the injury is due to the fault or neglect of an identifiable

individual or entity."  Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 426-27 (1987).  The

purpose of the rule is to prevent the "harsh results that otherwise would flow from mechanical

application of a statute of limitations," id. at 426, or, stated differently, the "unfairness of barring

claims of unknowing parties," Mancuso v. Neckles, 163 N.J. 26, 29 (2000).  Thus, under the

discovery rule, one's claim has "accrued" when he or she knows or has reason to know of "that

15

state of facts which may equate in law with a cause of action." <u>Burd v. New Jersey Tel. Co.</u>, 76 N.J. 284, 291 (1978).

When presented with a discovery rule situation, the Court must ask whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another. <u>Baird</u>, 155 N.J. at 65-66. For accrual to occur, the plaintiff need not have knowledge of the specific basis for legal liability or a provable cause of action, <u>Savage v. Old Bridge-Sayreville Med. Group, P.A.</u>, 134 N.J. 241, 248 (1993), but must have knowledge (1) of the injury and (2) that another is at fault. <u>Id.</u> at 246. In this regard, the New Jersey Supreme Court stated,

> "Fault" in the context of the discovery rule is simply that it is possible--not provable or even probable--that a third person's conduct that caused the injury was itself unreasonable or lacking in due care. In other words, knowledge of fault does not mean knowledge of a basis for legal liability or a provable cause of action; knowledge of fault denotes only facts suggesting the *possibility* of wrongdoing. Thus, knowledge of fault for purposes of the discovery rule has a circumscribed meaning: it requires only the awareness of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct *may* have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care.

<u>Savage</u>, 134 N.J. at 248 (italics in original). New Jersey courts have applied the discovery rule to causes of action brought by the representative of a decedent's estate pursuant to N.J.S.A. 2A:15-3. <u>See</u>, <u>e.g.</u>, <u>Silverman v. Lathrop</u>, 168 N.J. Super. 333, 339-340 (App. Div. 1979); <u>Duffy v. Ackerhalt</u>, 138 N.J. Super. 119, 122-23 (App. Div. 1975).

Although not briefed by the parties, it is notable that accrual of a Section 1983 claim, unlike state law claims, is a question of federal law. <u>Albright v. Oliver</u>, 510 U.S. 266, 280 n.6

(1994) (Ginsburg, J. concurring); Board of Regents v. Tomanio, 446 U.S. 478, 483-86 (1980);

Michaels v. State of N.J., 955 F. Supp. 315, 323 (D.N.J. 1996).  Under federal law, the

limitations period on a Section 1983 claim "begins to run from the time when the plaintiff knows

or has reason to know of the injury which is the basis" for the action.  Genty v. Resolution Trust

Corp., 937 F.2d 899, 919 (3d Cir. 1991) (citing Deary v. Three Un-Named Police Officers, 746

F.2d 185, 197, n.16 (3rd Cir.1984)).  Although federal law, rather than New Jersey common law,

governs the accrual of Section 1983 claims, the two standards are sufficiently similar for the

Court to consider them together.  See Rolax v. Whitman, 175 F. Supp. 2d 720, 727 (D.N.J. 2001)

(stating "[f]ederal and New Jersey state law relating to the accrual of causes of action and the

effect of the 'discovery rule' are essentially the same.").  With these principles in mind, the Court

turns to the issue of when the plaintiffs' causes of action accrued.

　　　　Plaintiffs argue that the Estate's causes of action did not accrue until November 2003

when their former counsel, the law firm of Wilentz, Goldman & Spitzer, reviewed Mr.

Anderson's medical records.  Plaintiffs argue they did not have notice of the facts surrounding

Mr. Anderson's death until October or November of 2003, making the action timely under the

discovery rule.  In response, the Monmouth Defendants submitted a letter by the Wilentz firm to

MCCI, dated April 15, 2003, stating they were retained to "review the circumstances surrounding

the death of J.B. Douglas Anderson, an inmate at the Monmouth County Correctional Institution

who died while in custody on January 29, 2003."  (Jones Cert., Ex. A.)  The Monmouth

Defendants' use of evidence outside of the pleadings, namely, the April 15, 2003 letter is

impermissible in a 12(b)(6) context.  At this point, the Court is obligated to take plaintiffs'

allegations at true for the purpose of a 12(b)(6) motion.  Moreover, the Court declines to convert

the Monmouth Defendants' motion into one for summary judgment[10] given the slim amount of

evidence submitted by the movant and the therefore barren factual record.  Even if the Court

considered this a motion for summary judgment, the Court would be required to leave resolution

of the issue of accrual of the cause of action for the trier of fact.[11]  Accordingly, the Court will

deny, without prejudice, the Monmouth Defendants' motion to dismiss plaintiff's Survivor's Act

claims.  For the same reasons, the Medical Defendants' "Cross-Motion for Summary Judgment"

to dismiss plaintiff's Survivor's Act claims as untimely under the statue of limitations is denied.[12]

### v.      Wrongful Death Claims

Defendants argue that plaintiffs' wrongful death claims should be dismissed as untimely.

Plaintiffs argue their wrongful death claims are tolled under the discovery rule and the infancy

---

[10]If on a Rule 12(b)(6) motion "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Fed. R. Civ. P. 12(b).  The parties must have notice of this conversion, which is "unambiguous" and that "fairly apprise[ ] the parties that the court intends to convert the motion, so they have the opportunity to present materials to the Court."  Rose v. Bartle, 871 F.2d 331, 340-42 (3d Cir. 1989).

[11]In New Jersey state court cases, the trial judge decides issues of fact over the date of accrual after an evidentiary hearing.  Lopez v. Swyer, 62 N.J. 267, 274-75 (1973).  In federal court, however, such issues are left to the jury.  See Goodman v. Mead Johnson & Co., 534 F.2d 566, 571-73 (3d Cir. 1976) (analyzing Lopez and holding that the Seventh Amendment requires that a jury, and not a District Court, resolve disputed issues of fact regarding the accrual of a cause of action under New Jersey's discovery rule).

[12]Given this holding, the Court need not decide whether or not the infancy doctrine, applies to plaintiff's Survivor's Act claims.  The Court notes, however, the case of LaFage v. Jani, 166 N.J. 412 (2001), in which the New Jersey Supreme Court held that the infancy doctrine does not toll claims under the New Jersey Survivor's Act.  Had the Court reached the issue, therefore, it would have held that the infancy doctrine does not apply to plaintiff's Survivor's Act claims.

doctrine. The Court will address these arguments in turn.

The discovery rule does not preserve plaintiffs' wrongful death claim because it applies only "to an accrual period of limitations," not to a limitations provision "based upon a fixed objective event," such as "death," which is the triggering event for the Wrongful Death Act limitations provision, N.J.S.A. 2A:31-3.[13] Bernoskie v. Zarinsky, 344 N.J. Super. 160, 165-66 (App. Div. 2001); Presslaff v. Robins, 168 N.J. Super. 543, 546 (App. Div. 1979); see also Hernandez v. St. James Hosp., 214 N.J. Super. 538, 542 (App. Div. 1986) (citing Presslaff and holding the discovery rule does not apply to a cause of action under the New Jersey Wrongful Death Statute) . Hitchings v. Armstrong World Indus., No. CIV.A.87-2936, 1988 WL 68936, at *2 (D.N.J. Jun. 29, 1988) (declining to apply the discovery rule to a wrongful death cause of action).  Unlike the two-year limitations period in N.J.S.A. 2A:14-2, which begins to run upon accrual, the Wrongful Death Act statute of limitations period begins to run upon "the death of the decedent, and not thereafter . . . ."  N.J.S.A. 2A:31-3.  The discovery rule, therefore, does not toll the limitations period for plaintiffs' Wrongful Death Act claims.

With respect to the infancy doctrine, N.J.S.A. 2A:14-21 provides:

> If any person entitled to any of the actions or proceedings specified in . . . [N.J.S.2A:14-2] is or shall be, at the time of any such cause of action or right or title accruing, under the age of 21 years, . . .

---

[13]N.J.S.A. 2A:31-3 provides:

> Every action brought under this chapter shall be commenced within 2 years after the death of the decedent, and not thereafter, provided, however, that if the death resulted from murder, aggravated manslaughter or manslaughter for which the defendant has been convicted, found not guilty by reason of insanity or adjudicated delinquent, the action may be brought at any time.

such person may commence such action or make such entry, within such time as limited by those statutes, after his coming to or being of full age . . . .[14]

The question before the Court is whether or not the infancy doctrine applies to plaintiffs' wrongful death claims.

The New Jersey Appellate division, in Barbaria v. Sayerville Township, 191 N.J. Super. 395 (App. Div. 1983), applied the infancy doctrine to toll the limitations period on filing a notice of claim under the New Jersey Tort Claims Act.  There, Mr. Barbaria was killed in a motorcycle accident on October 1, 1980 and was survived by his wife, four infant children, and one adult child.  On February 10, 1982, plaintiff filed claims with the Municipality in which the accident occurred and the State for damages arising from their alleged failure to maintain the location of the accident in a safe condition.  191 N.J. Super. at 398.  On February 16, 1982, plaintiff, in her capacity as Administratrix ad Prosequendum, filed an amended complaint against the Municipality and the State, claiming wrongful death and claims on behalf of the estate of the decedent.  Id.  The plaintiffs successfully moved for leave to file late claims under the New Jersey Tort Claims Act, and the State subsequently filed a motion for relief from the Court's order and to dismiss plaintiffs claims against it.  Id. at 399.  The trial judge allowed the infant plaintiffs' claims to proceed but barred the adults' claims.  Id. at 399-400.

---

[14]Though the statute indicates that the age of majority is 21, subsequent legislation has lowered it to 18.  Specifically, in 1973, the New Jersey Legislature enacted N.J.S.A. 9:17B-1 to - 3, which lowered the age of majority from 21 to 18.  While N.J.S.A. 2A:14-21 does not reflect this legislation, the New Jersey Supreme Court has interpreted N.J.S.A. 9:17B-3 to lower the age of majority for all purposes, "including the establishment of eighteen as the age until which the statutes of limitation referred to in N.J.S.A. 2A:14-21 are tolled."  Green v. Auerbach Chevrolet Corp., 127 N.J. 591, 598 (1992).  Therefore, under N.J.S.A. 2A:14-21, the limitations period for a minor generally does not begin to run until that minor reaches the age of 18.

In <u>LaFage v. Jani</u>, 166 N.J. 412, 429-31 (2001), the New Jersey Supreme Court, relying

of <u>Barbaria</u>, held that the infancy doctrine may be applied to the limitations period for a

Wrongful Death Act claim.  It reached that conclusion because the damages in a Wrongful Death

Act claim belong primarily to the decedent's next-of-kin.  <u>Id.</u> at 429.  Therefore, the infancy

doctrine may apply in appropriate cases, such as this, to toll the limitations period for wrongful

death claims asserted on behalf of minor.

This Court, therefore, holds that plaintiffs' remaining claims under the Wrongful Death

Act, except that lodged by Anne Blackwell as guardian ad litem for Douglas Anderson Lee, are

untimely.  The motion to dismiss is granted insofar as defendants seek dismissal of Wrongful

Death Act claims by plaintiffs other than the minor.

### vi.    New Jersey Tort Claims Act

The Monmouth Defendants argue that plaintiffs' state common law claims embodied in

Counts Eight, Nine, Ten, and Eleven should be dismissed as to them for failure to timely file a

notice of tort claims under the New Jersey Tort Claims Act.  The plaintiffs' only opposition to

the untimely filing of the notice of claims is grounded in the infant tolling provisions of N.J.S.A.

59:8-8.[15]  Since the Monmouth Defendants' motion with respect to the non-infant plaintiffs is

---

[15]N.J.S.A. 59:8-8 provides:

> A claim relating to a cause of action for death or for injury or
> damage to person or to property shall be presented as provided in
> this chapter not later than the ninetieth day after accrual of the
> cause of action. After the expiration of six months from the date
> notice of claim is received, the claimant may file suit in an
> appropriate court of law. The claimant shall be forever barred from
> recovering against a public entity or public employee if:
>
> a.      He failed to file his claim with the public entity within 90

unopposed, the state common law claims by those plaintiffs against the Monmouth Defendants

are dismissed for failing to timely file a notice of tort claim under N.J.S.A. 59:8-2 et seq. The

state common law claims by Anne Blackwell as guardian ad litem for Douglas Anderson Lee,

however, are timely under the infant tolling provisions of N.J.S.A. 59:8-8. Therefore, the motion

is denied as to those claims.

**III.     CONCLUSION**

      For all of the foregoing reasons,

1.     The Monmouth Defendants' motion to dismiss Counts One through Nine and Eleven of

      plaintiffs Joanne Anderson individually and in her capacity as mother of the decedent,

      and Anne Blackwell as guardian ad litem for Douglas Anderson Lee, the minor child of

      J.B. Douglas Anderson, is **GRANTED** and such claims are **DISMISSED** as to all

      defendants;

2.     The Monmouth Defendants' motion to dismiss Count Ten of plaintiff Joanne Anderson

      individually and in her capacity as mother of the decedent is **GRANTED** and such claim

      is **DISMISSED** as to all defendants;

---

          days of accrual of his claim except as otherwise provided in
          section 59:8-9; or

    b.     Two years have elapsed since the accrual of the claim; or

    c.     The claimant or his authorized representative entered into a
          settlement agreement with respect to the claim.

    Nothing in this section shall prohibit an infant or incompetent
    person from commencing an action under this act within the time
    limitations contained herein, after his coming to or being of full
    age or sane mind.

3.      The Monmouth Defendants' motion to dismiss Counts Eight, Nine, Ten, and Eleven of plaintiff Joanne Anderson as Administrator ad Prosequendum of the Estate of J.B. Douglas Anderson is **GRANTED** and such claims are **DISMISSED** as to the Monmouth Defendants only;

4.      The Monmouth Defendants' motion to dismiss Count Ten of plaintiff Anne Blackwell as guardian ad litem for Douglas Anderson Lee, the minor child of J.B. Douglas Anderson, is **DENIED**, without prejudice;

5.      The Medical Defendants' motion for summary judgment on the claim for punitive damages embodied in Count Ten of plaintiff Anne Blackwell as guardian ad litem for Douglas Anderson Lee, the minor child of J.B. Douglas Anderson, is **GRANTED** as to all defendants; and

6.      The Medical Defendants' motion for summary judgment on Counts One through Nine and Eleven of plaintiff Joanne Anderson as Administrator ad Prosequendum of the Estate of J.B. Douglas Anderson is **DENIED,** without prejudice.

An appropriate Order will follow.


Date: December 30, 2005

                                        /s/Stanley R. Chesler
_____         _____
                                        United States District Judge